Warren R. COOPER, Appellant,

v.

Benjamin EPSTEIN and Molly Epstein, Appellees.

No. 6730.

District of Columbia Court of Appeals.

Argued Feb. 26, 1973.

Decided Aug. 17, 1973.

Rehearing and Rehearing en Banc Denied Sept. 25, 1973.

Werner Strupp, Washington, D. C., for appellant.

Mattaniah Eytan, Washington, D. C., for appellees.

Before FICKLING, YEAGLEY and HARRIS, Associate Judges.

FICKLING, Associate Judge:

Appellant Warren R. Cooper, who claims to be an undisclosed principal, challenges the correctness of an award of summary judgment for appellees Benjamin and Molly Epstein, defendants below. He contends that there were genuine issues of material fact which could not be resolved without a trial on the merits. We agree and reverse.

On August 20, 1969, appellees and one Jimmie Buford, the alleged agent of appellant Cooper, executed a document entitled "Lease and Purchase and Sale Agreement." This agreement was essentially a contract to sell certain real estate within the District of Columbia. Initially, however, the property was to be leased to Buford for a period of up to 36 months for a fixed monthly rental, plus real estate taxes and insurance. Buford was also obligated to pay all utility charges and to provide appellees with a $1,000 deposit. It was agreed that upon the cancellation of an identified encumbrance, the lease would automatically terminate and the sale provi-

sions of the contract would come into play.[1] By the sale terms of the agreement, the purchase price was to be $18,000— $3,000 in cash, the balance being secured by a first deed of trust on the property. The $1,000 deposit and the rental payments were to be credited toward the cash down payment. The agreement also contained the following non-assignment clause:

> 4. That he [Buford] will not transfer nor assign this agreement, nor let nor sublet the whole or any part of said premises without written consent of Landlord first had and obtained such consent shall not be unreasonably withheld.

The monthly payments on the lease were tendered in accordance with the contract terms from September 1969 until February 1970. The March 1970 payment, however, was two weeks late in arriving, and the check which constituted that payment was eventually returned to appellees marked "insufficient funds." The April 1970 payment was also late, and, on April 6, 1970, appellees notified Buford by registered mail that they intended to cancel the contract for nonpayment. (Money orders which were subsequently tendered for the March and April payments were rejected by appellees.)

On May 1, 1970, the encumbrance set out in Clause "C", supra note 1, was removed. Subsequently, Buford was advised by District-Realty Title Insurance Company that the property had been sold to the District of Columbia Redevelopment Land Agency and that settlement had taken place on June 1, 1970. This information was confirmed by appellees, who also informed appellant's counsel that the consideration for the sale had been $27,000 (less a $950 contingent deduction).

Appellant filed a complaint for an accounting and breach of contract. He alleged that Buford[2] was his agent and was acting in that capacity when he signed the agreement.

After discovery, which consisted primarily of the deposing of appellant, the following was revealed.

Appellant, fearing that his credit standing might be suspect, arranged *orally* to have his employee, Buford, negotiate the purchase of the subject property. No documents were signed nor any receipt given for the $1,000 which appellant purportedly gave Buford for the initial deposit. Appellant can produce no record that he ever conveyed the $1,000 to Buford. Appellant has no records to show that he ever paid any of the rental payments or, in fact, was the principal to the contract. Appellant's knowledge of the terms of the contract was confused and quite limited. These facts and certain other collateral matters, when accepted as true,[3] paint a picture of appellant as a man of enormous trust and that he was at best an undisclosed principal.

Later, when appellees' motion for summary judgment came on for a hearing, the judge, focusing on the nonassignment

1. Appellees' contention that Clause "C" of the contract conferred only an option to purchase is frivolous in light of the plain, unambiguous language of that clause, which reads in pertinent part:

> (C) AND LESSORS (hereinafter sometimes referred to as "Seller") AND LESSEE (hereinafter sometimes referred to as "Purchaser") do further agree that if and when the Deed of Trust recorded December 18, 1964, as Instrument No. 44129 in Liber 12334 at Folio 432 is cancelled in its entirety and removed from record by order of the Court and lessors have title to said premises free of encumbrance, *then this Lease shall terminate as of the last day of the next following month in which the last of said events occur, and lessors do hereby agree to sell and lessee agrees to purchase said premises pursuant to the terms and conditions set forth below. . . .* [Emphasis added.]

2. The factual problems outlined *infra* were complicated by Buford's death, which occurred before the filing of this action.

3. 6 J. Moore, Federal Practice ¶ 56.15 (2d ed. 1948).

clause set out at 2 *supra*, stated that, "to contract against assignment, to contract against subleasing, it seems to me, is to manifest an intent which also excludes the undisclosed principal." He therefore ruled that the agreement as a matter of law excluded suit by an undisclosed principal.

Appellant, conceding—as he must—that the clause is *some evidence* of manifestation of an intent to exclude suit by an undisclosed principal, argues that the presence of the clause is not conclusive on the issue as a matter of law. We agree.

 It is well settled that, absent some special exception, an undisclosed principal may sue and be sued on a contract made by his agent. 3 Am.Jur.2d Agency §§ 311, 322 (1962); 3 C.J.S. Agency §§ 244, 276 (1936). Even the fact that the agent denies that there is a principal, or represents himself to be the principal, is not sufficient to preclude suit by the undisclosed principal. However, where the express terms of the contract provide that it (the contract) is to be effective only between the agent and the third party, the undisclosed principal may not enforce the contract. *See* Restatement (Second) of Agency § 303 (1958). The undisclosed principal simply cannot sue where to do so would violate a term of the written contract. Rederiaktiebolaget Argonaut v. Hani, [1918] 2 K.B. 247. Where the contract terms do not expressly exclude enforcement by or against an undisclosed principal, such liability may nevertheless be precluded if that was the intention of the parties. The resolution of the issue of whether the parties intended to exclude such liability is usually the duty of the fact finder.

We are of the opinion that when the motions judge ruled that Clause 4, *supra* at 2, precluded suit by an undisclosed principal as a matter of law, he erred. Comment c to Section 303 of the Restatement of Agency (Second) states:

*Non-assignment clause.* A clause in the contract against assignment does not of itself prevent the principal from bringing suit upon the contract. The existence of such a clause, however, *may be considered as evidence* that the parties intended to exclude an undisclosed principal . . .. [Emphasis added.]

We adopt this statement of the law and, therefore, remand this cause for trial on the merits. Additionally, on this record, mired as it is with factual and equitable considerations, we refuse to rule on other points pressed by appellees without such a trial.[4]

Therefore, we reverse the decision of the motions judge and remand this cause for trial.

Reversed and remanded.

---

4. *Compare* Archer v. United States, 217 F.2d 548 (9th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955).